# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD, | Case No. 1:21-cv-00421-AWI-SAB |
| Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO EITHER FILE AN AMENDED COMPLAINT OR NOTICE OF INTENT TO PROCEED ON CLAIM FOUND TO BE COGNIZABLE |
| v. | |
| ANDY GRAY, | |
| Defendant. | (ECF No. 1) |
| | THIRTY DAY DEADLINE |

William J. Gradford ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's complaint, filed on March 15, 2021. (ECF No. 1.)

## I.

## SCREENING STANDARD

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis*

1

1  proceedings which seek monetary relief from immune defendants); Cato v. United States, 70

2  F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis*

3  complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998)

4  (affirming *sua sponte* dismissal for failure to state a claim).  The Court exercises its discretion to

5  screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii)

6  fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

7  defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

8    In determining whether a complaint fails to state a claim, the Court uses the same

9  pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a

10  short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R.

11  Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the

12  elements of a cause of action, supported by mere conclusory statements, do not suffice."

13  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.

14  544, 555 (2007)).

15    In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and

16  accept as true all factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89,

17  94 (2007).  Although a court must accept as true all factual allegations contained in a complaint,

18  a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.  "[A]

19  complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops

20  short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting

21  Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for

22  the court to draw the reasonable conclusion that the defendant is liable for the misconduct

23  alleged.  Iqbal, 556 U.S. at 678.

24  **II.**

25  **COMPLAINT ALLEGATIONS**

26    The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of

27  the *sua sponte* screening requirement under 28 U.S.C. § 1915.

28    From around May 4, 2020, to February 5, 2021, Andy Gray ("Defendant") was Plaintiff's

2

1  probation officer.  (Compl. 2,[1] ECF No. 1.)  Plaintiff alleges that during this time period,

2  Defendant committed many retaliatory acts.  (Id.)  Plaintiff's brother, Alonzo Gradford[2] is a

3  well-known and well connected attorney in Stanislaus County.  (Id.)  Alonzo knows Defendant

4  and his office is one block away from the probation office.  (Id.)  Alonzo also knows many

5  Stanislaus County deputies.  (Id.)

6         Plaintiff filed suit in the district court against his two prior probation officers, Officer

7  Andrew Walzeack and Jose Della Haya, that work with Defendant.  Plaintiff has been wearing

8  an ankle monitor for two years and was required to follow all court orders.  (Id.)  He has not been

9  in any trouble and has continued to follow all court orders and obey all the terms of his

10 probation.  (Id.)  Similar to his prior probation officers, Defendant refused to remove the ankle

11 monitor or to allow him to transfer out of Stanislaus County due to the "constant and ongoing

12 retaliation and retaliation tactics against [him] for 'speaking up' against many authorities and

13 himself.".  (Id. at 2-3.)  Defendant continues to use the ankle monitor on Plaintiff to advance his

14 personal retaliation.  (Id. at 3.)

15        During the ten months when Defendant was Plaintiff's probation officer, Plaintiff would

16 apply for jobs and those jobs that wanted an interview would change their mind after a few days.

17 (Id.)  Plaintiff stopped receiving his mail, especially mail from the unemployment office

18 ("EDD").  (Id.)  Plaintiff was approved and then suddenly all mail stopped especially after

19 Plaintiff was constantly calling and writing to no avail.  (Id.)  Just recently, after Defendant was

20 no longer his probation officer, Plaintiff received a letter from the EDD out of the blue and is

21 now receiving his mail.  (Id.)  Plaintiff contends that these are just some of the things that

22 Defendant, Alonzo, and others involved are doing to him.  (Id.)

23        Around January 12, 2021, Defendant came to Plaintiff's home by himself which was

24 unusual and told him to call Defendant in about three weeks to get the exact date because he was

25 going to be getting off probation.  (Id. at 3-4.)  Plaintiff immediately began to yell and had tears

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] To avoid confusion, Mr. Alonzo Gradford shall be referred to by his first name.

of joy, stating, "Thank you!  Thank you!  Thank you.  I am leaving here and never coming back."  (Id. at 4.)  Three weeks later, Plaintiff went to the probation office and Defendant was not in so he spoke to a woman.  (Id.)  He told the woman what Defendant had said and she told him that he was getting off probation around February 5, 2021.  (Id.)  Plaintiff asked her for a citizen complaint form to file a complaint against Defendant.  (Id.)  He had been planning to file a complaint against Defendant but Defendant did not know that.  (Id.)  Plaintiff asked for Defendant's business card and she said that he would have to come back when Defendant was in. (Id.)

Plaintiff went back to the probation office the next day and Defendant called him back to his office and seemed very agitated and angry.  (Id. at 4-5.)  Defendant spoke in a strong and angry tone stating that the lady had told Defendant that Plaintiff got a complaint form, making Plaintiff believe he was being arrested.  (Id. at 5.)  Defendant asked Plaintiff what he had against probation.  (Id.)  As Plaintiff started to talk, Defendant cut him off asking him why he was writing all these complaints against probation.  (Id.)  Plaintiff told Defendant that he was all alone without any help and was trying to protect himself from all the retaliation.  (Id.)  Defendant continued to intimidate and harass Plaintiff, cutting him off from speaking or answering his very sarcastic but serious and angry questions.  (Id.)  Then, Defendant asked what Plaintiff had against Alonzo and again cut Plaintiff off before he could answer.  (Id.)  Defendant was upset and abruptly stopped talking and turned to his computer and started typing.  (Id. at 6.)  Defendant said, "You know what."  "I got some bad news for you now.  Your [sic] not getting off probation now."  (Id.)  Plaintiff was extremely disappointed to the point of tears.  (Id.)  Plaintiff contends that Defendant "made stuff up" to justify keeping him on probation longer to stop him from filing a complaint against him and took revenge because Plaintiff had filed a complaint against his co-workers.  (Id.)  Defendant gave Plaintiff a sheet that contained new probation terms and told Plaintiff that he was signed up for some classes that were to start in four days.  (Id.)  Plaintiff went to the class as directed and was told that he was not signed up for any class.  (Id. at 6.)

In interrogatories in another case, Deputy McCarthy admitted that he coached Alonzo's son for many years.  (Id. at 7.)  Plaintiff contends that Defendant, Alonzo and other family

1   members were also involved in some way, shape or form and had knowledge of the drive by

2   shooting against Plaintiff.  (Id.)  Plaintiff also filed a complaint with the State Bar against

3   Alonzo.  (Id.)  Plaintiff called the city attorney in his other cases and explained what Defendant

4   had done.  (Id.)  Plaintiff is seeking monetary damages.  (Id. at 13.)

5                                                      **III.**

6                                              **DISCUSSION**

7       **A.      Section 1983**

8           Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or

9   other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d

10  1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

11  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim under section 1983,

12  Plaintiff must demonstrate that each defendant personally participated in the deprivation of his

13  rights.  Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th

14  Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at

15  934.  In a section 1983 action, the complaint must allege that every defendant acted with the

16  requisite state of mind to violate underlying constitutional provision.  OSU Student Alliance v.

17  Ray, 699 F.3d 1053, 1070 (9th Cir. 2012).

18      1.      Retaliation

19          Plaintiff alleges that there was constant ongoing retaliation and retaliatory acts due to his

20  complaints.   "The First Amendment forbids government officials from retaliating against

21  individuals for speaking out."  Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010).

22  Under section 1983, retaliation by a state actor for the exercise of a constitutional right is

23  actionable even though the action, if taken for different reasons, would have been proper.  Mt.

24  Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283–84 (1977); Wilson v. City of Fountain

25  Valley, 372 F.Supp.2d 1178, 1186 (C.D. Cal. 2004).  To state a claim, a plaintiff must show that

26  he was engaged in protected conduct and that adverse action was taken against him because of

27  that protected conduct.  Wilson, 372 F.Supp.2d at 1186; see also Blair, 608 F.3d at 543 (to

28  prevail on a retaliation claim, "a plaintiff must prove: (1) he engaged in constitutionally

1   protected activity; (2) as a result, he was subjected to adverse action by the defendant that would

2   chill a person of ordinary firmness from continuing to engage in the protected activity; and (3)

3   there was a substantial causal relationship between the constitutionally protected activity and the

4   adverse action.").

5       Plaintiff has failed to allege any causal connection between the majority of the acts

6   alleged in the complaint and Defendant sufficient to state a claim.  See Turner v. Smith, No. 11-

7   CV-5176 CRB, 2017 WL 897333, at *6 (N.D. Cal. Mar. 7, 2017), aff'd, 734 F. App'x 460 (9th

8   Cir. 2018) (a retaliation claim requires acausal connection between the retaliatory animus of one

9   person and that person's own injurious action).  For example, Plaintiff contends that he applied

10  for jobs and did not get them and that he was not receiving mail, specifically from the EDD.  But

11  there are no facts alleged in the complaint to link Defendant to Plaintiff's failure to be hired or

12  his mail service.  Plaintiff's speculation is insufficient to state a cognizable claim.

13      Plaintiff alleges that Defendant required him to wear ankle monitors and refused to allow

14  him to transfer out of Stanislaus County during the time that he was on probation.  But, Plaintiff

15  has not alleged any facts that would lead to the reasonable inference that requiring the use of

16  ankle monitors or refusal to allow Plaintiff to move out of the County was due to Plaintiff's

17  protected conduct or that it was adverse action that could be attributed to Defendant.

18      First, Plaintiff was subjected to ankle monitoring since January 2019, during the period of

19  time that he was supervised by his previous probation officers.  Here, Plaintiff's complaint

20  demonstrates that Plaintiff was subject to the ankle monitor requirement prior to being

21  supervised by Defendant.

22      Further, Defendant was simply enforcing a court order which is necessary to the judicial

23  process.  Engebretson v. Mahoney, 724 F.3d 1034, 1042 (9th Cir. 2013).  The Supreme Court

24  "has long expressed the general idea that public officials who ministerially enforce facially valid

25  court orders are entitled to absolute immunity."  Engebretson, 724 F.3d at 1038; see also Valdez

26  v. City & Cty. of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989) ("an official charged with the

27  duty of executing a facially valid court order enjoys absolute immunity from liability for

28  damages in a suit challenging conduct prescribed by that order").  Plaintiff has not alleged any

1   facts that requiring him to wear an ankle monitor or requiring him to remain in the county were
2   not due to a valid court order.  It would appear from the allegations in the complaint that
3   Defendant would be entitled to quasi-judicial immunity for enforcing the court ordered terms of
4   Plaintiff's probation.

5       However, Plaintiff's allegation that Defendant fabricated information to extend his
6   probation after Plaintiff indicated he was going to file a complaint is sufficient to state a
7   retaliation claim.

8       2.   Conspiracy

9       To the extent that Plaintiff is attempting to state a claim for conspiracy, he has failed to
10  do so.  In the context of conspiracy claims brought pursuant to section 1983, a complaint must
11  "allege [some] facts to support the existence of a conspiracy among the defendants."  Buckey v.
12  County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police
13  Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired
14  or acted jointly in concert and that some overt act was done in furtherance of the conspiracy.
15  Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974).

16      A conspiracy claim brought under section 1983 requires proof of "an agreement or
17  meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th
18  Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-
19  41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v.
20  Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,
21  866 F.2d 1121, 1126 (9th Cir. 1989)).  "To be liable, each participant in the conspiracy need not
22  know the exact details of the plan, but each participant must at least share the common objective
23  of the conspiracy."  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

24      Plaintiff makes vague and conclusory allegations that his brother conspired with
25  Defendant and other county officials to harm him.  However, there are no facts alleged that
26  would lead to the reasonable inference that a conspiracy existed to violate Plaintiff's federal
27  rights.  For example, Plaintiff alleges that Alonzo was a well-known attorney, he personally
28  knows Defendant, and his office was a block from where Defendant worked.  But such

1  familiarity and proximity is insufficient to infer that any conspiracy existed.   Similarly,
2  Plaintiff's conclusory allegations that Defendant, Alonzo, and other deputies were somehow
3  involved in a drive by shooting aimed at Plaintiff is insufficient for the Court to reasonably infer
4  that any of the individuals were engaged in a conspiracy to violate Plaintiff's rights.

5                                                        IV.

6                                      **CONCLUSION AND ORDER**

7          For the reasons discussed, Plaintiff's complaint states a retaliation claim against
8  Defendant Gray for extending his probation based on fabricated evidence, but fails to state any
9  other cognizable claims for a violation of Plaintiff's constitutional rights.   The Court will grant
10 Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes in good faith,
11 are curable.   Lopez, 203 F.3d at 1130.   If Plaintiff chooses to amend his complaint, he may not
12 change the nature of this suit by adding new, unrelated claims in his second amended complaint.
13 George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

14         If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding
15 only on the cognizable claim identified by the Court, he may file a notice informing the Court
16 that he does not intend to amend and he is willing to proceed only on his claim against Defendant
17 Gray.   The Court will then recommend to a district judge that this case only proceed on that
18 claim for the reasons discussed above.

19         If Plaintiff chooses to file an amended complaint, that complaint should be brief, Fed. R.
20 Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of
21 Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-89.   Although accepted as true, the
22 "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . .
23 ." Twombly, 550 U.S. at 555 (citations admitted).

24         An amended complaint supersedes all prior complaints.   Lacey v. Maricopa County, 693
25 F.3d 896, 927 (9th Cir. 2012).   Absent prior court approval, the amended pleading must be
26 complete in itself without reference to any prior pleading.   Local Rule 220.   Finally, any
27 amended complaint is limited to 25 pages in length.   An amended complaint which exceeds this
28 limit will be stricken.

1    Based on the foregoing, it is HEREBY ORDERED that:

2    1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

3    2.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file

4    either:

5    a.    an amended complaint, limited to **25 pages** in length, or

6    b.    a notice of his intent to proceed upon the cognizable claim identified in

7    this order; and

8    3.    Plaintiff is warned that if he fails to comply with this order, the Court will

9    recommend to the district judge that this action be dismissed for the failure to

10   prosecute and the failure to comply with a court order.

11

12   IT IS SO ORDERED.

13   Dated:   **March 25, 2021**

     UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9